

Diana J. Nobile<br>djn@mselaborlaw.com

September 9, 2024

**VIA ECF**
Henry J. Ricardo
Magistrate Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

  Re: *Benjamin, et al., v. City of New York,* Case No. 1:23-cv-05458

Dear Judge Ricardo:

  Plaintiffs respectfully submit this letter on behalf of all Parties regarding the proposed Settlement Agreement ("Agreement" or "Settlement") between Plaintiffs and Defendant, the City of New York ("Defendant" or "City"), in the above-referenced case brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

  The Settlement is a fair and reasonable resolution of a *bona fide* dispute between the Parties and should be approved. The signed Settlement Agreement (**Exhibit 1**) and a Proposed Order (**Exhibit 2**) are attached, along with supporting declarations from Plaintiffs' Counsel, Diana J. Nobile ("Nobile Decl.") (**Exhibit 3**) and Hope Pordy ("Pordy Decl.") (**Exhibit 4**).[1]

  All 2,248 Plaintiffs have been fully informed of the terms of the Settlement, the breakdown of the Settlement funds, the amount allocated to each Plaintiff under the Settlement Agreement, including each Plaintiff's proportional share of backpay, net liquidated damages, and (consistent with the Plaintiffs' individual retainer agreement with Plaintiffs' Counsel) each Plaintiff's proportional share of attorneys' fees paid to Plaintiffs' Counsel. All Plaintiffs have been provided with an opportunity to review the Settlement Agreement and submit disputes regarding their eligibility dates or objections. ***There have been no objections to the Settlement and the reaction to the Settlement has been nothing but positive.***

  The Parties now submit the Settlement Agreement for the Court's consideration pursuant to *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206 (2d Cir. 2015), and *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599-600 (2d Cir. 2020).

---

[1] Pursuant to Paragraph 8.1 of the Agreement, should the Court deem a settlement approval conference necessary, the Parties request that a telephonic conference be set at a time convenient to the Court, and Plaintiffs' Counsel will notify Plaintiffs of the date and time.

I.    **Procedural History and Claims Asserted in this Case**

Plaintiffs filed their Complaint on June 27, 2023. (Dkt. 1). Defendant answered on September 11, 2023. (Dkt. 66). The Parties participated in a Rule 26(f) conference on September 13, 2023. (Dkt. 73). At that conference, the Parties agreed to participate in alternative dispute resolution through assignment to a mediator. (Dkt. 73). In the event mediation proved unsuccessful, the Parties agreed to a schedule for conducting representative discovery. (Dkt. 73-74).

This action is the third FLSA case on behalf of individuals who are or have been employed by the City of New York in the positions of Child Protective Specialists (CPS) and Child Protective Specialist Supervisors (CPSS) employed by the City of New York in the Administration for Children's Services (ACS). The first case, *Foster v. City of New York,* No. 1:14-cv-4142-PGG, was resolved on the eve of trial, after completing full discovery and summary judgment in favor of the plaintiffs with respect to liability, through a settlement approved by this Court on December 28, 2021. The second case, *Williams v. City of New York,* No. 1:16-cv-08671-PGG, which included CPS and CPSS who did not file their consent to join forms in *Foster* before the opt-in deadline, resolved through a settlement approved by this Court on November 7, 2022, based on the settlement model applied in *Foster*. The claims of the Plaintiffs in *Williams* were stayed during the pendency of *Foster* and, upon reaching agreement in *Foster*, the Parties applied the same settlement methodology to resolve *Williams*.

The instant case involves the same FLSA claims as *Foster* and *Williams* and is brought on behalf of individuals in the same positions as those earlier cases. However, *Benjamin* Plaintiffs who were also part of *Foster* or *Williams* have recovery periods in this matter that begin after the recovery period end dates in those cases. While this case is similar to *Foster* and *Williams*, if not for settlement, this case would have involved full discovery on the Plaintiffs' claims and Defendant's defenses. In other words, unlike *Williams*, the Court would not be bound by the factual determinations in *Foster* on summary judgment and the use of representative evidence. As explained below, absent settlement, this case would have necessitated substantial discovery, motions practice, and pre-trial proceedings.

Plaintiffs' claims involve unpaid and underpaid overtime pursuant to the FLSA and allege that Defendant violated the FLSA in the following ways:

1) Defendant failed to compensate Plaintiffs for pre-shift and post-shift work captured in the Defendant's timekeeping system, CityTime ("CityTime");

2) Defendant failed to compensate Plaintiffs for overtime work performed during Plaintiffs' unpaid meal periods;

3) Defendant failed to properly calculate the regular rate of pay in violation of the FLSA by failing to include night shift differentials and meal allowances in the calculation of the rate at which overtime was paid;

4) Defendant failed to pay overtime at the rate of one and one-half times the regular rate of pay in violation of the FLSA by compensating Plaintiffs for hours in excess of 40 in a workweek with compensatory time or cash at a straight time rate; and

5) Defendant failed to pay overtime in a timely fashion.

Plaintiffs also allege that Defendant's conduct lacked good faith and reasonableness, thus entitling Plaintiffs to liquidated damages in an amount equal to their backpay, and that Defendant willfully violated the law, thereby extending the statute of limitations from two to three years under 29 U.S.C. § 255(a).

As part of settlement-related discovery, the City provided pay and CityTime data for the Plaintiffs in this matter. The Plaintiffs' expert prepared damages calculations, which Plaintiffs provided to the City's expert for review, along with a settlement demand. Following settlement discussions and several exchanges of offers and counteroffers, accounting for, as discussed below, assessment of different risks faced by the Plaintiffs in this matter than those present in *Foster* and *Williams*, the Parties reached a settlement in principle to resolve this matter on August 12, 2024, in advance of the scheduled mediation in this case. (Dkt. 91). That settlement was reduced to writing and signed by the Parties on September 3, 2024.

## II.     Terms of the Settlement Agreement

The Agreement provides that Defendant will pay $13,739,998.00 ("Settlement Amount") to resolve the lawsuit. The Settlement Amount will be paid as follows: (1) $6,999,999.00 in backpay ("Backpay Amount") by checks made payable to each Plaintiff (via direct deposit for current employees or by check delivered to Plaintiffs' Counsel for separated employees) in the amount of each Plaintiff's share as determined by Plaintiffs' Counsel; and (2) one check in the amount of $6,739,999.00 constituting liquidated damages, attorneys' fees, litigation expenses and Service Awards payable to Plaintiffs' Counsel for distribution to Plaintiffs ("Lump Sum Amount").

Plaintiffs and their Counsel have an agreement regarding the distribution[2] of the Lump Sum Amount which is reflected in the Agreement. The Lump Sum Amount will be distributed as follows: (1) $2,595,633.28 in net liquidated damages; (2) $4,500.00 in Service Awards ("the Service Award Amount") to the three named Plaintiffs who also served as Settlement Team Members, each receiving $1,500.00; (3) $25,523.31 in out-of-pocket expenses to Plaintiffs' Counsel; and (4) a 30% contingency fee to Plaintiffs' Counsel in the amount of $4,114,342.41 calculated after expenses are deducted. Each Plaintiff individually agreed, in writing, to a 30% contingency fee when they retained the law firms.

The Backpay Amount and net liquidated damages portion of the Settlement Amount were calculated by Plaintiffs' Counsel and will be divided among the Plaintiffs as follows: For each

---

[2] Defendant takes no position regarding the distribution of the Lump Sum Amount as the distribution amounts were determined solely by Plaintiffs' Counsel pursuant to their agreement with Plaintiffs.

week that a Plaintiff worked as a CPS or CPSS ("covered title") during the recovery period, the Plaintiff received one point.[3]

The recovery period for each Plaintiff is dependent on whether they were a Plaintiff in *Foster* or *Williams,* or whether they were not involved in either case. This is because the release end date in *Foster* and *Williams* limits the recovery period start date for the Plaintiffs who were in those cases. Specifically: (1) for Plaintiffs who did not participate in either *Foster* or *Williams*, the recovery period start date is three years prior to the date a Plaintiff's consent-to-sue form was filed in Court; (2) for Plaintiffs who recovered in the *Foster* settlement, the recovery period start date in this case is December 21, 2021; (3) for Plaintiffs who recovered in the *Williams* settlement, the recovery period start date in this case is November 1, 2022.  For all Plaintiffs, the recovery period

---

[3] The methodology of using weeks of employment during the relevant statute of limitations period to determine the Plaintiffs' amounts is the methodology used in other FLSA cases involving complicated off-the-clock claims and a variety of different claims wherein the risks and valuations of each claim and the amounts of work time the Plaintiffs may win are difficult to separately quantify for each Plaintiff and for each claim. *E.g., Casis v. City of New York,* Case No. 1:22-cv-1926-SN (S.D.N.Y.), Dkt. 54 (Jan. 20, 2023) (approving settlement agreement for UPRs, AUPRs, and APSWs using same distribution methodology); *Feiner v. City of New York,* Case No. 1:16-cv-08675-PGG (S.D.N.Y.), Dkt. 86 (January 16, 2023); *Williams v. City of New York,* Case No. 16-cv- 08671 (S.D.N.Y.), Dkt. 101 Nov. 7, 2022); *De La Cruz v. City of New York,* Case No. 14-CV-9220-PGG, Dkt. 227 (July 1, 2022); *Foster,* Dkt. 242 (Dec. 28, 2021); *Matias v. City of New York*, Case No. 21-cv-1736-GHW, Dkt. 39 (October 29, 2021) (approving settlement agreement for School Safety Agent Level 3 title at NYPD using same distribution methodology); *Campbell v. City of New York,* Case No. 16-cv-8719 (AJN) (SDA), Dkt. 186 (S.D.N.Y. Sept. 17, 2021) (approving settlement agreement for DHS security officers using same distribution methodology); *Murray, v. City of New York;* Case No. 1:16-cv-08072 (PKC), Dkt. 228 (S.D.N.Y. Apr. 23, 2021) (approving settlement agreement for various administrative titles at DHS using same distribution methodology); *Lawtone-Bowles v. City of New York,* Case No. 1:16-cv-04240 (AJN) (OTW), Dkt. 157 (S.D.N.Y. Apr. 8, 2021) (approving settlement agreement for DHS motor vehicle operators using same distribution methodology); *Bookman, v. City of New York*, Case No. 1:18-cv-04338 (AJN) (OTW), Dkt. 102 (S.D.N.Y. Apr. 8, 2021) (same); *Worley, v. City of New York*, Case No. 1:17-cv-04337 (LGS), Dkt. 230 (S.D.N.Y. Jun. 8, 2020) (approving settlement agreement for NYPD school safety agents using same distribution methodology); *Perry v. City of New York*, Case No. 1:13-cv-01015 (VSB) (S.D.N.Y. Feb. 13, 2020) (approving settlement agreement for FDNY Fire Inspectors using same distribution methodology); *Jones v. New York City Housing Authority*, No. 1:17-cv-3683 (JGK) (S.D.N.Y. Dec. 17, 2018) (approving FLSA settlement agreement for NYCHA housing assistants using same distribution method); *Brown v. New York City Housing Authority*, Case No. 1:16-cv-9263 (RA) (S.D.N.Y. Sep. 14, 2018) (approving FLSA settlement agreement for 856 NYCHA maintenance workers and heating plant technicians using same distribution method); *Johnston v. New York City Housing Authority,* Case No. 1:16-cv- 9924 (S.D.N.Y. Jan. 19, 2018) (approving settlement agreement using same distribution methodology at issue here for NYCHA Exterminators); *Small v. City of New York,* Case No. 1:14-cv-3469 (S.D.N.Y. May 15, 2015) (approving settlement of FLSA claims by NYPD police sergeants using same distribution methodology used here); *Mullins v. City of New York*, Case No. 1:06 cv 20238 (SAS) (same).

end date is either April 1, 2024, or their last day of employment in a covered title, whichever is earlier. The points were then divided into $9,595,632.28 ("Net Settlement Fund"), to determine the dollar value of a point. The Net Settlement Fund is the Backpay Amount and liquidated damages *after* attorneys' fees, litigation expenses, and Service Awards are deducted. Exhibit A to the Settlement lists Plaintiffs' distribution amounts after attorneys' fees and expenses are deducted.[4]

As reflected in Paragraph 2.4 of the Agreement, Plaintiffs have entered into individual agreements with Plaintiffs' Counsel. These agreements provide for a contingency attorney fee amount equal to thirty percent (30%) of the Settlement Amount calculated after litigation expenses are deducted from the Settlement Amount. Plaintiffs and their Counsel are solely responsible for determining the contingency attorney fee applicable to this Agreement. Plaintiffs' Counsel shall deduct their contingency attorney fee in the amount of $4,114,342.41 from the Lump Sum Amount in accordance with Plaintiffs' individual agreements with Plaintiffs' Counsel.

In consideration and exchange for this Settlement, the Plaintiffs agree to release the Defendant for all wage and hour claims through April 1, 2024. The Parties agreed to this release date because it is the date through which Plaintiffs' expert calculated damages in anticipation of mediation. Nobile Decl., ¶ 7.

Each Plaintiff has been informed, in writing, of the methodology for assigning points, the value of a point, and the number of points calculated for them using the Defendant's payroll data. Each Plaintiff has been informed of the allocation of the Settlement Amount between backpay, liquidated damages, attorneys' fees, and costs, and each Plaintiff's proportional amount of attorneys' fees and the costs paid to Plaintiffs' Counsel. Each Plaintiff has been given an opportunity to dispute the number of points assigned and to review the point assignments and settlement awards of all other Plaintiffs. There are no unresolved disputes, and there are no objections. Nobile Decl., ¶ 4.

### III. Applicable Factors for Approving FLSA Settlements

A settlement in an FLSA collective action is not effective unless it is approved by either a district court or the United States Department of Labor. *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599-600 (2d Cir. 2020); *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206 (2d Cir. 2015). "As a result, district courts in this Circuit routinely review FLSA settlements for fairness before approving any stipulated dismissal." *Id.* "Courts generally recognize a "strong presumption in favor of finding a settlement fair" in cases like this one brought under the FLSA, as they are "not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Martinez v. 189 Chrystie St. Partners*, LP, No. 22-CV-3111 (JLC), 2024 WL 1853179, at *2 (S.D.N.Y. Apr. 29, 2024); quoting *Souza v. 65 St. Marks Bistro*, No. 15-CV-327 (JLC), 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015).

---

[4] Plaintiffs had until September 1, 2024, to review their settlement allocation and to lodge any disputes.

"In determining whether to approve proposed FLSA collective action settlements, courts are mindful of the fact that FLSA collective actions do not implicate the same due process concerns as Rule 23 actions." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013). Unlike Rule 23 class actions where failure to affirmatively opt-out results in a class member being bound by an approved class settlement, in an FLSA action like this one, an eligible individual who decides ***not*** to join is ***not*** a party to the case, and as such, is not bound in any way by the settlement agreement, or the final judgment in a case. *See Mikityuk v. Cision US Inc.*, No. 21-CV-510 (LJL), 2022 WL 3013107, at *3 (S.D.N.Y. July 29, 2022) ("Because a party who has not opted in to a FLSA collective action can bring suit at a later date, FLSA collective actions do not implicate the same due process concerns as Federal Rule of Civil Procedure 23 actions, and thus, the standard for approval of a FLSA settlement is lower than for a class action under Rule 23.") (internal quotations omitted). As such, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes.'" *Beckman*, 293 F.R.D. at 476. "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Id*.

Courts evaluating whether FLSA settlements are reasonable consider the following factors:

(1) the plaintiffs' range of possible recovery;
(2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses;
(3) the seriousness of the litigation risks faced by the parties;
(4) whether the settlement is the product of arm's-length bargaining between experienced counsel; and
(5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012). *See also Fisher*, 948 F.3d at 599-600 ("District courts typically evaluate the fairness of a settlement agreement by considering the factors outlined in *Wolinsky*…."). Additionally, the Settlement here contains a narrow release, limited to wage and hour claims for the time periods Plaintiffs worked as CPS and/or CPSS during each Plaintiff's relevant recovery period, and imposes no provisions that this Court has deemed to be inconsistent with the purposes of the FLSA or *Cheeks* and its progeny, which further demonstrates that settlement approval is warranted. *See Clarke v. City of New York*, Case No. 1:23-cv-02158 (June 5, 2024) (limited non-mutual release and absence of confidentiality and non-disparagement provisions support settlement); *Murray v. City of N.Y.*, No. 16 Civ. 8072 (PKC) (BCM), 2021 WL 2073462, at *1 (S.D.N.Y. Apr. 23, 2021); *Flores Galloso v. 3821 Food Corp.*, No. 20 Civ. 1940 (RA), 2021 WL 860343, at *2 (S.D.N.Y. Mar. 8, 2021).

### A.  Application of the *Wolinsky* Factors

As discussed below, the proposed Settlement is fair and reasonable to Plaintiffs and Defendant.

### i. Plaintiffs' Possible Range of Recovery

As explained below, the Settlement results in a non-reversionary **$9,595,632.28** Net Settlement Fund for the 2,248 Plaintiffs. Plaintiffs believe the Net Settlement Fund, which is the amount to be distributed to the Plaintiffs after fees, expenses and Service Awards are deducted, is equal to **61%** of Plaintiffs' total claimed damages on their best day in court using a full three-year recovery period (where applicable to Plaintiffs who did not recover in *Foster* or *Williams*) and a full award of liquidated damages. Nobile Decl., ¶ 14. The average net settlement amount to the 2,248 individual Plaintiffs is **$4,268.52**. *Id.*

Specifically, if Plaintiffs were fully successful following discovery, motions for summary judgment, and/or at trial, and proved that all plaintiffs worked through the maximum number of meal periods without compensation, and that the damages could be established using representative discovery for all Plaintiffs, they would have sought the following damages for a three-year recovery period:

| Total Gross Recovery If <u>Fully</u> Successful on All Claims At Trial | | |
|---|---|---|
| **Claim** | **Backpay** | **Liquidated Damages (100%)** |
| Regular Rate | $110,924 | $110,924 |
| Straight Overtime | $107,996 | $107,996 |
| Delayed Payment of Overtime | | $914,612 |
| Uncompensated Pre and Post Shift Minutes | $706,571 | $706,571 |
| Missed Meal Period | $6,462,243 | $6,462,243 |
| Total: | $7,387,734 | $8,302,346 |
| **Total Backpay and Liquidated Damages** | | **$15,690,080** |

The Backpay and Liquidated Damages agreed to by the Defendant to resolve this case, before deducting attorneys' fees, expenses, and the Service Award Amount, is **$13,499,998** ("**Gross Damages Amount**"). Nobile Decl., ¶ 15. Defendant also agreed to pay a portion of hourly attorneys' fees in the amount of $214,476.69 and expenses in the amount of $25,523.31. *Id.* These amounts were added to the $13,499,998.00 to arrive at the total Settlement Amount of $13,739,998.00. The **Gross Damages Amount** breaks down as follows:

| Gross Damages Amount (Before Attorneys' Fees and Service Awards) | | |
|---|---|---|
| **Claim** | **Backpay** | **Liquidated Damages** |
| Regular Rate | $110,924 | $110,924 |
| Straight Overtime | $107,996 | $107,996 |
| Delayed Payment of Overtime | | $777,420 (85%) |
| Uncompensated Pre and Post Shift Minutes | $706,571 | $635,914 (90%) |
| Missed Meal Period | $6,074,508 (94%) | $4,867,745 (75%) |
| Total: | $6,999,999 | $6,499,999 |
| **Total Backpay and Liquidated Damages** | | **$13,499,998** |

Plaintiffs believe that the Gross Damages Amount is equal to approximately **86%** of Plaintiffs' Total Claimed Damages using a full three-year recovery period and a full award of liquidated damages.

By comparison, the **Net Settlement Fund**, which is the amount to be distributed to the Plaintiffs after fees, expenses and Service Awards are deducted, can be broken down as follows for a three-year recovery period:

| Net Settlement Fund After Attorneys' Fees, Expenses, and Service Awards | | |
|---|---|---|
| **Claim** | **Backpay** | **Liquidated Damages** |
| Regular Rate | $110,924 | $110,924 (100%) |
| Straight Overtime | $107,996 | $107,996 (100%) |
| Delayed Payment of Overtime | | $777,420 (85%) |
| Uncompensated Pre and Post Shift Minutes | $706,571 | $184,789 (26.15%) |
| Missed Meal Period | $6,074,508 (94%) | $1,414,505 (21.89%) |
| Total: | $6,999,999 | $2,595,633.28 |
| **Total Backpay and Liquidated Damages** | | **$9,595,632.28** |

Comparing the Plaintiffs' best day in court after trial ($15,690,080) to the Net Settlement Fund ($9,595,632.28), Plaintiffs are recouping **61%** of their total claimed damages through this settlement. Considering the risks associated with establishing through discovery and at summary judgment that, like in *Foster*, the undisputed evidence demonstrates that Plaintiffs worked before and/or after their shift and during their unpaid meal periods, and if successful at summary judgment, establishing that the use of representative testimony at trial should apply to the claims in this matter and with establishing collective-wide damages, this amount is certainly reasonable. *See Arsenal v. Star Nissan, Inc.,* No. 23-CV-06631 (HG), 2024 WL 1513531, at *2 (E.D.N.Y. 2024) (approving net recovery of approximately 15.72% of Plaintiff's estimated maximum damages); *Andreyuk v. ASF Constr. & Excavation Corp.*, No. 19-cv-7476, 2023 WL 3993933, at *3 (S.D.N.Y. 2023) (approving settlement range of 8% to 19% in FLSA / NYLL hybrid action); *Rojas v. Pizza Pete's LLC*, 2019 U.S. Dist. LEXIS 149717, 2019 WL 4447578, at *5 (net settlement of 36% of total alleged damages after deducting costs and counsels' 1/3 contingency fee is "clearly reasonable given the uncertainties inherent in any litigation"); *Chowdhury v. Brioni America, Inc.*, 2017 WL 5953171, at *2 (S.D.N.Y. 2017) (net settlement of 40% of FLSA plaintiffs' maximum recovery is reasonable); *Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486, at *2 (S.D.N.Y. 2017) (net settlement of 29.1% of FLSA plaintiffs' maximum recovery is reasonable); *Felix v. Breakroom Burgers & Tacos*, 15 Civ. 3531, 2016 U.S. Dist. LEXIS 30050, 2016 WL 3791149 at *2 (S.D.N.Y. 2016) (net settlement of 25% of FLSA plaintiff's maximum recovery is reasonable).

Of course, if fully successful at trial, Plaintiffs would be bound by the 30% contingent fee agreements each Plaintiff signed with Plaintiffs' Counsel, and the Net Judgment after the fee agreement is taken into account would be **$10,983,056**. Comparing a potential Net Judgment after fees to the amount recouped by Plaintiffs under the Net Settlement Fund here, which similarly is the amount Plaintiffs recoup after attorneys' fees are deducted, the Net Settlement Fund represents **86%** of the Plaintiffs' best day in court.

The amounts above are based on damages calculations prepared by Plaintiffs' expert damages witness, Dr. Louis Lanier, which were reviewed by Defendant's expert witness, Dr. Christopher Erath, as part of the Parties' arm's-length negotiations.

Notably, the damages are based on a **three-year statute of limitations** on all claims (for Plaintiffs not subject to the releases in *Foster* or *Williams*). Ex. 1, ¶ 2.5. To achieve this outcome at trial, Plaintiffs would have been required to prove that Defendant willfully violated the law; otherwise, a two-year statute of limitations would apply. 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

**Full Relief on the Regular Rate and Straight Time Claims.** In *Foster*, Plaintiffs were granted summary judgment on liability on the Regular Rate Claim and the Straight Time Claim. Given that the claims stem from the same pay practices, Plaintiffs are confident the *Foster* decision would have controlled on these claims, leaving a jury to decide the amount of backpay owed as a result of these violations, as well as whether a three-year or two-year recovery period applied. The Court would have then determined whether liquidated damages were owed. In this matter, the amounts listed above account for three years of full backpay damages on these claims, as well as a full award of liquidated damages equal to the backpay. The calculation of damages for these, and all other claims, was based on the Defendant's payroll and CityTime data for all Plaintiffs.

**Late Payment of Overtime Claim.** On Plaintiffs' Late Payment of Overtime Claim, which would require Plaintiffs to prove that Defendant, and not Plaintiffs, caused a delay in the payment for approved overtime work, the Settlement represents liquidated damages equaling 85% of the amount Plaintiffs sought to recover at trial. The damages associated with the Late Payment of Overtime Claim are liquidated damages to compensate Plaintiffs for the delayed, but eventual, payment for the overtime work. Accordingly, payment of $777,420 equals 85% of the maximum possible recovery on this claim. Plaintiffs faced risk on this claim because it required Plaintiffs to prove it was Defendant's actions, and not Plaintiffs' (e.g., by failing to timely submit requests for approval and payment for overtime work), that resulted in delayed payment.

**Uncompensated Pre- and Post-Shift Overtime Claim.** The settlement amount associated with the Pre- and Post-Shift Overtime Claim in this matter was calculated based on the time recorded in CityTime up to 30 minutes per day total. For example, if the CityTime data reflected that a Plaintiff worked an additional 30 minutes of uncompensated time on all five days in a workweek, 150 minutes (30 minutes multiplied by five days) of backpay overtime damages were assigned for that workweek for this claim. Additionally, the Net Settlement Fund (after attorneys' fees) includes an amount equal to 26% of the backpay amount as liquidated damages on the Pre- and Post-Shift Overtime Claim. Plaintiffs faced risk on this claim because Plaintiffs carry the burden of proving: 1) the amount of uncompensated overtime work performed; 2) that the City knew or should have known about the unpaid work performed, and 3) that that proof can be met with representative evidence from a subset of Plaintiffs.

**Meal Period Claim.** The settlement represents 94% of the claimed backpay on the Meal Period Claim for 2 hours and 30 minutes per week for each week of the recovery period for each Plaintiff. Additionally, the Net Settlement (after attorneys' fees) includes an amount equal to 22% of the backpay as liquidated damages on the Meal Period Claim.

Notably, Plaintiffs faced the greatest risk on the Pre- and Post-Shift Overtime and Meal Period Claims because, unlike in *Williams* where the Parties agreed that the *Foster* decisions would likely control on issues of liability, full discovery would have been necessary in this matter to prove that Plaintiffs performed unpaid work, and that the City knew or should have known about that work. Additionally, Plaintiffs carry the burden of proving the amount of time they worked through their unpaid meal periods each workweek, and that the time captured in CityTime as uncompensated pre- and post-shift minutes represented work time.

Significantly, for the Pre- and Post-Shift Overtime and Meal Period Claims, if Plaintiffs were successful in meeting their burden of proof, it is possible that a jury could have awarded *fewer* minutes per day of pre- or post-shift overtime, or *fewer* minutes per week in unpaid meal periods. And even if a jury ruled in Plaintiffs' favor, a jury may have found that these violations were not willful, resulting in a two-year rather than three-year recovery period, and it is possible that the Court may not have awarded liquidated damages. These scenarios, which would result in a smaller judgment than provided for in the Settlement here, would still be a successful outcome for Plaintiffs, so achieving the Settlement here without expending the resources necessary to litigate this case through discovery, summary judgment, pre-trial motions, trial, and possible appeals is an excellent outcome.

Additionally, the City raised new defenses to the Pre and Post-Shift Overtime and Meal Period Claims that were not present during the *Foster/Williams* litigation. As the City raised in the Joint Letter accompanying the Parties' proposed case management plan:

> [T]hose plaintiffs who sued prior in *Foster* and *Williams* were or should have been aware that they were not to do work during their meal times or pre- and post-shift without requesting overtime. Plaintiffs failed to mitigate any damages. Further, contrary to Plaintiff's assertion above, ACS made significant changes after the *Foster* and *Williams* case. ACS did implement the use of lunchtime forms on August 9, 2023 to make clear the lunch schedules of their employees and to notify them that if they need to work during their mealtime, they must discuss with a supervisor and put in a request for overtime. A bulletin authorizing mealtime overtime was sent to all DCP staff on February 6, 2023. Trainings based on the bulletin were rolled out in quarter one of 2023 and thus far have been completed by 88.09% of staff.

(Dkt. 73, p. 2). Thus, the City's defenses would require significant discovery and would lead to disputed legal issues regarding whether these allegations, if true, impacted whether they City knew or should have known about the Plaintiff's alleged unpaid work time, whether the City's violations were in good faith and reasonable, and whether the Plaintiffs could prove a willful violation. Moreover, discovery would be necessary on whether these alleged facts, which were not present in *Foster/Williams*, impacted the Plaintiffs' ability to rely on representative testimony at trial or would require testimony from each of the 2,248 Plaintiffs in this matter.

Taken together, it is clear that Plaintiffs' claims on the two issues that result in the most damages would be hotly contested, and create uncertainty throughout discovery, summary

judgment, pre-trial motions, trial, and appeal. Thus, in light of the range of recovery as compared to the amounts provided for under the Agreement, as well as the uncertainty present if this case proceeded to discovery and trial, this Settlement represents an excellent result for the Plaintiffs on *all* claims.

### ii. Avoiding Anticipated Burdens and Expenses

Litigating FLSA claims through fact discovery, expert discovery, motions for summary judgment, motions to determine if collective treatment at trial is appropriate, and through a multi-day or multi-week trial, would be a resource-intensive process demanding significant additional costly litigation for both Parties. Indeed, in *Foster*, the case took ***7.5 years*** to litigate from filing the Complaint to a final decision on approval of the eventual settlement.

Specifically, without this Settlement, both Parties would need to spend significant time and resources in extensive discovery, including preparing and responding to written discovery, numerous Plaintiff depositions, numerous Fed. R. Civ. P. 30(b)(6) and fact witness depositions, expert discovery, motions practice, trial preparation, including meeting with and preparing numerous witnesses for trial testimony, preparing trial exhibits, motions *in limine*, pre-trial briefing, drafting jury instructions, voir dire, and a verdict form, preparing opening statements, presenting the case to a jury, preparing summation, presenting the issue of liquidated damages to the Court for a decision, likely post-trial motions practice, and possible appeal. In short, absent settlement, the anticipated burdens and expenses on both Parties were significant.

### iii. Seriousness of Litigation Risks

As noted above, there was risk to both sides regarding the implications of the legal rulings in *Foster*, the City's defenses that were not at issue in *Foster*, and the amount of uncompensated work performed on the claims that result in the most significant damages to the Plaintiffs: Plaintiffs' Pre- and Post-Shift Claim and Meal Period Claim, as well as the issues of whether the Defendant's violations on all claims were willful and lacked good faith or reasonableness. Given the uncertainty over the potential outcome, both Parties were motivated to settle this dispute.

### iv. Arm's-Length Bargaining

Both Parties engaged in good faith, arm's-length negotiation in reaching this Settlement. Counsel for the Parties negotiated settlement terms over the course of several months, until a tentative settlement was reached. Plaintiffs' expert witness analyzed detailed payroll information and timekeeping records and shared those calculations and all underlying programing with Defendant. Defendant's expert reviewed and analyzed Plaintiffs' damages calculations, and these calculations were relied upon by the Parties to negotiate the settlement amount.

Ultimately, the Parties reached an agreement in principle and the settlement terms were then approved by the Plaintiffs' Settlement Team. In addition, all Plaintiffs have been informed of the Settlement and its terms, and they have been informed of their opportunity, if they so choose, to object to the settlement terms on an individual basis. In addition, they were informed of the Settlement distribution methodology and the point value. They had an opportunity to dispute the

number of recovery period weeks assigned to them, and to review the amounts and weeks allocated to each and every Plaintiff, including the Service Awards.[5] ***No Plaintiff has lodged any objection to the Settlement, and the reaction of the Plaintiffs has been nothing but positive.***

### v. Possibility of Fraud or Collusion

Given the Parties' arm's-length negotiating and their good faith participation in settlement discussions, there was no opportunity for fraud or collusion. The Parties represented their clients zealously and obtained what both Parties consider to be a fair and reasonable Settlement consistent with standards established in the Second Circuit for FLSA collective action settlements.

### B. The Service Awards to the Settlement Team Plaintiffs are Appropriate[6]

Courts in this Circuit have recognized that, "[i]n FLSA collective actions, just as in Rule 23 class actions, service awards are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *See, e.g., Sanz v. Johnny Utah 51 LLC*, 2015 WL 1808935 (S.D.N.Y. 2015) (quoting *Diaz v. Scores Holding Co., Inc.*, 2011 U.S. Dist. LEXIS 112187, 2011 WL 6399468 at *3-4 (S.D.N.Y. 2011)).

The Service Awards will be provided to the three Settlement Team members who also served as lead Plaintiffs and assisted in settlement discussions, ultimately approving this Settlement and recommending the Settlement to the collective. Nobile Decl., ¶ 5-6. The Service Awards total $4,500 and are approximately 0.03% of the $13,739,998.00 Settlement Amount. All 2,248 Plaintiffs have been informed of these payments, and none have objected to the Service Awards. Nobile Decl., ¶ 5.

The Settlement Team spent time gathering facts for the initial Complaint, participating in the settlement discussions, reviewing damages calculations, assessing the various settlement scenarios and facilitating in recommending a settlement to the other Plaintiffs. Thus, the time and effort exerted by the Settlement Team resulted in a significant benefit to the collective. *Id*. The Settlement Team's willingness to serve the collective achieved favorable results for 2,245 additional Plaintiffs (e.g., average individual settlement amount is $4,268.52 *after* fees, expenses, and Service Awards are deducted). *Id.* Under well-established Second Circuit precedent, the Settlement Team members are entitled to the Service Awards sought in this Settlement.

---

[5] Plaintiffs had until September 1, 2024, to dispute the points allocated to them.

[6] Defendant takes no position regarding the Service Awards provided to the Settlement Team as these Awards are made pursuant to agreements solely between Plaintiffs and their Counsel.

### C. Attorneys' Fees and Costs[7]

Each of the 2,248 Plaintiffs signed a written contract in which they agreed to a 30% contingency fee when they retained the law firms handling this case. Nobile Decl., ¶ 11. Accordingly, under the Settlement Amount, after expenses in the amount of $25,523 are reimbursed, Plaintiffs' Counsel will be paid $4,114,342.41, which represents a 30% contingency fee of the Settlement net of costs. *See Run Guo Zhang v. Lin Kumo Japanese Rest., Inc.*, 2015 WL 5122530 at *1 (S.D.N.Y. 2015) ("The Court's view is that attorneys' fees, when awarded on a percentage basis, are to be awarded based on the settlement net of costs.").

### i. The Negotiated Terms of an FLSA Settlement Agreement Cannot Be Modified

In *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 605 (2d Cir. 2020), the Second Circuit clarified that there is no cap on the amount of attorneys' fees to be recovered in an FLSA settlement, and held that a district court abuses its discretion by rewriting and reallocating funds, including attorneys' fees, under a settlement agreement negotiated between the parties. The Second Circuit held a cap on attorneys' fees is contrary to the FLSA because "in advancing Congress's goals under the FLSA to ensure a 'fair day's pay for a fair day's work,' the law cannot be read to impose a proportional limitation based on the perceived complexities of the litigation." *Fisher*, 948 F.3d at 603. As such, the Court held that "in light of the text and purpose of the FLSA, as well as longstanding case law interpreting other similar fee-shifting statutes in the civil rights context, we conclude that the district court erred in imposing a proportionality limit on [plaintiff's counsel's] recoverable attorneys' fees." *Id.* at 605.

The Court held that "a district court may not simply rewrite the terms of a settlement agreement because a 'settlement agreement is a contract that is interpreted according to general principles of contract law.'" *Id.* at 605. "If the 'terms of a contract are clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself.'" *Id.* (quoting *Lilly v. City of New York*, 934 F.3d 222, 235 (2d Cir. 2019)).

### ii. The Amount Sought for Attorneys' Fees is Similar to Court-Approved Fees in Similar Cases

The Second Circuit favors the use of the contingent percentage method to compensate attorneys in overtime wage and hour actions. *See, e.g., McDaniel v. County of Schenectady,* 595 F.3d 411, 417 (2d Cir. 2010); *Wal-Mart Stores, In. v. Visa U.S.A., Inc.* 396 F.3d 96 (2d Cir. 2005). The reasoning behind this is straightforward: "[T]he percentage method directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Monserrate v. Tequipment, Inc.*, 2012 WL 5830557 at *3 (E.D.N.Y.

---

[7] As described in the Settlement Agreement, each of the Plaintiffs has entered into individual agreements with Plaintiffs' Counsel that contain contingency fee provisions. The Defendant is not a party to these agreements. As such, Defendant takes no position regarding Section III(c) of this letter.

2012). That "powerful incentive" is the very real possibility that plaintiffs' counsel will not recover any fees whatsoever. *Butt v. Megabus Ne. LLC*, 2012 U.S. Dist. LEXIS 137683 at *22 (S.D.N.Y. 2012) ("Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation. [Therefore, a] percentage-of-recovery fee award of 33.3% is consistent with the Second Circuit's decision").

"Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." *Beckman,* 293 F.R.D. at 477. As such, evaluating the amount of fees provided for in a settlement agreement using the "percentage-of-recovery" method is consistent with the "trend in this Circuit." *Bannerman v. Air-Sea Packing Grp.*, 2020 WL 408350, at *3 (S.D.N.Y. 2020) (approving attorneys' fees of 33 1/3%). And adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and NYLL. *DeLeon v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 65261, 2015 WL 2255394 at * 5 (S.D.N.Y. 2015) (FLSA and New York labor law claims) (citing *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000), for "commending the general 'sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.'").[8]

Indeed, many individual litigants, including the Plaintiffs here, likely "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *deMunecas v. Bold Food, LLC*, 2010 U.S. Dist. LEXIS 87644, 2010 WL 3322580 at *21-22 (S.D.N.Y. 2010) (quoting *In re Abrams*, 605 F.3d 238, 245-46 (4th Cir. 2010)); *Bozak v. FedEx Ground Package Sys.,* 2014 WL 3778211, at *16 (D. Conn. 2014) ("Fee awards in wage and hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.").

### ii. Plaintiffs' Counsel's Private Contingency Fee Agreements With Each of the 2,248 Plaintiffs Should Be Honored

Consistent with the Second Circuit's disposition toward contingent percentage recovery in FLSA cases is its favorable position toward private fee agreements. By enforcing such agreements, the Court provides low income and individual plaintiffs with a powerful tool for enforcing their rights. As the Supreme Court has explained in the civil rights context, "[Nothing] in the legislative history … persuades us that Congress intended § 1988 to limit civil rights plaintiffs' freedom to contract with their attorneys." *Venegas v. Mitchell*, 495 U.S. 82, 87 (1990). This is because

---

[8] *See also Capsolas v. Pasta Resources Inc.,* 2012 WL 4760910, at *8 (S.D.N.Y. 2012) (fee request of one-third is "consistent with the norms of class litigation in this circuit"); *Viafara v. MCIZ Corp.,* 2014 WL 1777438 at *27-28 (S.D.N.Y. 2014) (approving 33 1/3 % fee consistent with norms of fee shifting litigation in Second Circuit); *Zeltser v. Merrill Lynch & Co.*, 2014 WL 4816134, at *9 (S.D.N.Y 2014) (same); *Sukhnandan v. Royal Health Care of Long Island LLC*, 2014 WL 3778173, at *4 (S.D.N.Y. 2014) (same); *Clem v. KeyBank, N.A.*, 2014 WL 2895918, at *10-11 (S.D.N.Y. 2014) (same).

"depriving plaintiffs of the option of promising to pay more than the statutory fee if that is necessary to secure counsel of their choice would not further § 1988's general purpose of enabling such plaintiffs in civil rights cases to secure competent counsel." *Id*. at 89-90. Therefore, the fee-shifting provision of § 1988 "controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer." *Id*. at 90.

The same holds true in the fee shifting context of the FLSA. *See, e.g., Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 141 n.4 (2d Cir. 2007) (in ADEA case, which incorporates same fee-shifting provision as FLSA, Court concluded that attorney and client should be able to settle distribution of the attorney's fees "according to their own contract terms, which are beyond the province of this Court."); *Samaroo v. Deluxe Delivery Sys.*, 2016 U.S. Dist. LEXIS 34742, 2016 WL 1070346 at *9 n.4 (S.D.N.Y. 2016) (approving attorneys' fees and costs of more than 34% of the settlement consistent with fee agreement); *Chowdhury*, 2017 U.S. Dist. LEXIS 196469, 2017 WL 5953171 at *15-16 ("Finally, pursuant to a retainer agreement signed by plaintiffs, plaintiffs' counsel will receive one third of the settlement proceeds, exclusive of counsel's out-of-pocket costs, for contingency fees. Contingency fees of one-third in FLSA cases are routinely approved in this Circuit.").

Here, each of the 2,248 Plaintiffs entered into a private fee agreement to pay their "private attorneys general" a 30% percent contingency fee.[9] This was expressly incorporated into the Settlement Agreement as reflected in the distribution of the settlement funds. The attorneys' fee distribution is reasonable. As recently explained by Magistrate Judge Gorenstein:

> We decline to perform a 'lodestar cross check' because it would have no bearing on our assessment of the reasonableness of the fee sought if it turned out that the 'lodestar' for counsel's hours (that is, a reasonable hourly rate multiplied by the reasonable number of hours expended) is far less than the one-third contingency payment.

*Puerto v. Happy Life Home Health Agency Inc.*, No. 23 CIV. 4915 (GWG), 2023 WL 8258103, at *2 (S.D.N.Y. 2023); *Martinez v. 189 Chrystie St. Partners, LP*, No. 22-CV-3111 (JLC), 2024 WL 1853179, at *2 (S.D.N.Y. 2024) ("Notably, some courts have chosen not to compare the contingency payment to the actual hours expended by counsel, and there is much force to that approach as well."). As Judge Gorenstein explained:

> [T]here is no common fund created by the settlement. Instead, the plaintiff and the attorney agreed in advance that the attorney would be entitled to one-third of the settlement as attorney's fees. The very purpose of a contractual contingency fee arrangement is to ensure recovery for an attorney <u>regardless of the number of hours actually expended by the attorney</u>.

---

[9] Copies of the contingency fee agreements signed by settlement team members Albert-Ann Benjamin, Teresa Castelli, and Yoshica Small (with Personally Identifiable Information redacted) are attached to the Declaration of Diana J. Nobile as Exhibit A. This is the same agreement each of the 2,245 additional Plaintiffs signed.

*Puerto*, 2023 WL 8258103, at *2 (emphasis in original).

The same is true here. This is not a common fund case, nor is it a Rule 23 class action where there are absent class members. In this case, each Plaintiff individually retained Plaintiffs' Counsel to represent them in this matter pursuant to the contingency fee agreement, and consistent with those agreements, no Plaintiff raised any disputes or objections to the attorneys' fee amount.

Judge Gorenstein accurately described the reason that private contingent fee agreements should be honored in the context of FLSA cases:

> [A]ttorneys who take on FLSA cases on contingency bear the risk of having to litigate cases in which the recovery may not adequately compensate them for the time expended. *See generally King v. Fox*, 2004 WL 68397, at *5 (S.D.N.Y. Jan. 14, 2004) ("Contingency fees account for the risk taken in representing a client."). Therefore, in cases where attorneys spend fewer hours than would be required to match the amount in the contingency arrangement, it is only proper that they be permitted to collect their contracted fee given the risk they have assumed. "[A] contingency fee arrangement provides an incentive to counsel to take on cases that are less than sure winners." *Blizzard v. Astrue, 496 F. Supp.* 2d 320, 325 (S.D.N.Y. 2007). Finding such contingency fee arrangements not "reasonable" under *Cheeks* whenever the attorney is compensated at a high hourly rate as a result of the contingency arrangement — or when the fees paid to counsel exceed the "multiplier" that would be considered reasonable in a common fund case — will only serve to diminish the pool of attorneys willing to accept the risk of taking on FLSA cases. See *Almanzar*, —— F.Supp.3d at ——, 2023 WL 6979460, at *3. ***Such a result runs counter to one of the purposes of the FLSA — to provide an avenue for workers deprived of their just wages to seek redress in the courts — and is therefore rejected.*** *Id.*

*Puerto*, 2023 WL 8258103, at *2 (emphasis added) (citations in original).

In *Puerto*, the Court found that the one-third contingency fee, exclusive of costs, "is the customary contingency percentage in FLSA cases." *Id.* Further, the Court noted that "Counsel was engaged to represent plaintiff on a one-third contingency fee basis, which in and of itself provided counsel with a strong incentive to settle the case for the maximum recovery possible." *Id.* at *2.

Taken together, Plaintiffs' Counsels' 30% contingent fee agreements with the 2,248 Plaintiffs in this case is reasonable, and, as explained further in Section III.c.iii, the fee agreements provide for a percentage that is ***below*** the customary contingency percentage in FLSA cases. Thus, the agreements are consistent with public policy to provide an avenue for workers deprived of their just wages to seek redress in the court through representation by competent counsel.

### iii. The Attorneys' Fees Sought are in Line with Settlements of Similar Size, Complexity and Subject Matter, and *Less Than* the One-Third Percentage Customarily Approved in FLSA Cases.

"[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.'" *Xiao v. Grand Sichuan Intn'l St. Marks, Inc.*, 2016 U.S. Dist. LEXIS 99669, 2016 WL 4074444 at *3 (S.D.N.Y. 2016) (citing *Meza v. 317 Amsterdam Corp.*, 2015 U.S. Dist. LEXIS 166890, 2015 WL 9161791 (S.D.N.Y. 2015)). *See also Martinez v. 189 Chrystie St. Partners, LP*, No. 22-CV-3111 (JLC), 2024 WL 1853179, at *2 (S.D.N.Y. 2024) ("Although there is not a proportionality requirement, attorney's fees in FLSA cases generally amount to a third of the settlement award…"); *Manjarrez v. Bayard's Ale House LLC*, No. 21-CV-1968 (OTW), 2022 WL 17363952, at *2 (S.D.N.Y. 2022) (attorneys' fees pursuant to an FLSA settlements "generally amount to a third of the settlement award."); *Bryant v. Potbelly Sandwich Works, LLC*, 2020 U.S. Dist. LEXIS 21900, 2019 WL 1915298, at *15 (S.D.N.Y. 2020) (in FLSA/Rule 23 hybrid, approving one-third as "reasonable and well within the accepted range awarded in wage and hour cases in this District and throughout the Second Circuit"); *Cruz v. Sal-Mark Rest. Corp.,* 2019 U.S. Dist. LEXIS 13529, 2019 WL 355334 at *21 (N.D.N.Y. 2019) (approving one-third fee, noting that a "presumptively reasonable fee takes into account what a reasonable, paying client would pay" and this "supports a one-third (33.33%) recovery in a case like this one where Class Counsel's fee entitlement is entirely contingent upon success"); *Chung v. Brooke's Homecare LLC,* 2018 WL 2186413, at *3-4 (S.D.N.Y. 2018) (awarding one-third fee, noting that "Courts routinely award 33.33% of a settlement fund as a reasonable fee in FLSA cases"); *Penafiel v. Babad Mgmt. Co., LLC,* 2018 U.S. Dist. LEXIS 66991, 2018 WL 1918613 at *9 (S.D.N.Y. 2018) (awarding 33.3% fee, noting "Contingency fees of one-third in FLSA cases are routinely approved in this Circuit").

Not only is the contingent fee of 30% sought in this matter (1) ***lower*** than the norm of one-third typically awarded in this Circuit, (2) consistent with fees in wage and hour cases in this Circuit, and (3) what each of the Plaintiffs agreed to pay at the outset of this litigation, but the attorneys' fees requested here are also in line with other settlements of a similar size, complexity and subject matter.

Here, after deducting attorneys' fees and expenses, Plaintiffs are recouping ***61% of their total possible recovery (after attorneys' fees and expenses are deducted) if they were fully successful on all issues years down the road***. Of course, if the matter went to trial and plaintiffs received a judgment winning the maximum amount on all claims, plaintiffs would be responsible for paying the thirty percent (30%) contingent fee. Thus, the maximum recovery for the plaintiffs after fees are paid is seventy percent of the total recovery. This fee is entirely consistent — and in fact ***less than*** the attorneys' fees approved — in settlements of similar size, complexity, and subject matter. *See e.g., Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 178, 185-86 (W.D.N.Y. 2011) (awarding $14 million dollars in attorneys' fees, representing one-third of $42 million settlement fund in a Rule 23/FLSA hybrid involving "thousands of class members"); *Worley v. City of New York,* Case No. 17-cv-04337-LGS, Dkt. 230 (S.D.N.Y. Jun. 8, 2020) (approving one-third contingency fee of $9,197,682.07 in FLSA collective action from settlement totaling $27,747,075.22 where the average net settlement amount to the 3,880 Plaintiffs was $4,726.38); *Yuzary v. HSBC Bank USA, N.A.*, 2013 U.S. Dist. LEXIS 144327, at *24 (S.D.N.Y.

2013) (approving requested attorney's fee of $4,953,125, representing 31.7% of the settlement fund of $15,625,000 in FLSA/Rule 23 hybrid settlement); *Hart v. RCI Hosp. Holdings*, 2015 U.S. Dist. LEXIS 126934, 2015 WL 557713 at *5, *11, *44 (S.D.N.Y. 2015) (approving requested attorneys' fee of $4,928,949.74 representing 32.9% of the gross settlement amount of $15 million in 2,208-member FLSA/Rule 23 hybrid reversionary settlement where the average payment assuming full participation of the class was $4,255).

"[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Fisher,* 948 F.3d at 606 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992)) (internal quotation marks omitted). The average net award in this case is more than $4,268.52 per Plaintiff even after the contingent fee is paid, which is more than the awards recovered in cases of similar size. Further, as the cited cases make clear, the contingent fee percentage being paid by the Plaintiffs is ***less*** than contingent fees paid in cases of similar size. In short, the result for Plaintiffs is outstanding.

### iv. Early Settlement of Wage and Hour Cases is Encouraged

Notably, the thorough investigation by Plaintiffs' Counsel into the claims of the Plaintiffs allowed the Parties to enter into early meaningful settlement negotiations. *See* Nobile Decl., ¶ 8; Pordy Decl., ¶ 13 In approving settlement agreements, district courts in the Second Circuit reviewing a settlement providing for a contingent percentage for attorneys' fees consider the importance of encouraging the swift resolution of collective actions and avoiding creating a disincentive to early settlement. *See e,g., Clarke v. City of New York,* Case No. 1:23-cv-02158, Dkt. 46 (S.D.N.Y. 2024) (approving a one-third contingency fee and noting that "counsel was able to achieve a substantial recovery for their clients in this case at a relatively early stage in the litigation, and such settlements should not be disincentivized."); *Lesser v. Tiaa Bank*, No. 19-CV-1707 (BCM), 2020 U.S. Dist. LEXIS 194281, at *8 (S.D.N.Y. 2020) (approving a one-third contingency percentage to plaintiffs' counsel and noting that considering the relevant factors, "including the 'degree of success obtained' — which the Court finds to be significant in light of the litigation risks summarized above and the costs and uncertainties that have been avoided — and 'recognizing the importance of encouraging the swift resolution of cases like this one and avoiding 'creating a disincentive to early settlement, the Court concludes that counsel's proposed fee award is fair and reasonable.'") (quoting *Pinzon v. Jony Food Corp.*, No. 18-CV-105(RA), 2018 U.S. Dist. LEXIS 87424, at *9 (S.D.N.Y. 2018)).

Here, as explained above, the degree of success obtained in this matter is excellent, and this early settlement allows Plaintiffs to recover their settlement amounts in a timely manner without facing the risks associated with discovery, motions practice and trial, which was likely to focus on issues related to the Defendant's defenses in this matter. The Plaintiffs benefitted greatly from the significant wage and hour expertise of Plaintiffs' Counsel. *See* Nobile Decl., ¶¶ 8-9, 15-26; Pordy Decl., ¶¶ 3-16.

In short, in light of the degree of success obtained, approval of this early Settlement — including the 30% negotiated agreement for attorneys' fees — encourages swift resolution of similar cases and avoids creating a disincentive to early settlement.

### D. Approval of Plaintiffs' Counsels' Expenses is Warranted

Under the Settlement, Plaintiffs' Counsel will be reimbursed for $25,523.31 in out-of-pocket expenses. A breakdown of the expenses incurred by McGillivary Steele Elkin LLP is attached to the Declaration of Diana Nobile as Exhibit B. A breakdown of the expenses incurred by Spivak Lipton LLP is attached to the Declaration of Hope Pordy as Exhibit A. Plaintiffs' Counsel are entitled to reimbursement of litigation expenses as set forth in the Settlement Agreement. 29 U.S.C § 216(b). The expenses, including experts, copying, printing, and mailing were reasonable and necessary to Counsels' representation of Plaintiffs. *McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 390 (S.D.N.Y. 2017) (awarding expenses for experts, copying, electronic research, travel and printing, and other out-of-pocket expenses).

### IV. Conclusion

For all of the above reasons, the Parties believe that this Settlement is a favorable outcome and will appropriately compensate Plaintiffs for the overtime pay issues that are the subject matter of this litigation. Accordingly, the Parties respectfully submit that the Settlement, in its entirety, is fair and reasonable and should be approved by the Court.

Respectfully submitted,

*/s/Diana J. Nobile*
Diana J. Nobile

cc:  All counsel of record (via ECF)